## Case No. 10,483.
### The OLD DOMINION.
[8 Ben. 221.][1]

District Court, E. D. New York.   July, 1875.

COLLISION IN HAMPTON ROADS—STEAMER AND SCHOONER—DANGEROUS MANŒUVRE.

Three schooners were running into Hampton Roads in the night, all heading west north west

[1] [Reported by Robert D. Benedict. Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

for the Thimble light. A steamship bound out from the Roads passed the two first schooners on her port side, but came in collision with the third, which was about a quarter of a mile astern, and which struck her on her starboard bow nearly at right angles and was sunk by the collision. The schooner alleged that she kept her course and that the steamer, which was on her port hand, starboarded her wheel and ran across her bows. The steamer alleged that the schooner was on her starboard bow; that she starboarded to give her more room, and that the schooner changed her course by porting her helm and endeavored to cross the steamer's bows and thus caused the collision: *Held*, that the attempt to pass between the two schooners was a dangerous manœuvre, which caused the collision, and for which the steamer was liable, whether the attempt arose from an error of judgment on the part of her officers or from their failure to observe the third schooner, with which she collided.

On the evening of the 11th of November, 1874, the schooner Louise Crockett, which had put to sea from Hampton Roads, meeting threatening weather, put back to Hampton Roads, and when within a mile or two of the Thimble light was sunk by a collision with the steamship Old Dominion, which was bound out from Norfolk to New York. The owners of the schooner and of the cargo on board her filed separate libels to recover their damages. On behalf of the schooner it was alleged that the schooner had the regulation lights set and was sailing on her port tack for the Thimble light, heading west north west with the wind north east; that the head light of the steamer was seen about two miles off, bearing one or two points on the schooner's port bow; that the schooner kept her course, and the steamer approached, showing first her green light and then the green and red lights; that the steamer then changed her course and ran across the schooner's bows, showing her green light only, and the vessels struck, the schooner striking the starboard bow of the steamer nearly at right angles. On behalf of the steamer it was alleged that shortly after passing the Thimble light, while heading east by south on her course down the bay, the red and green lights of the schooner were seen about a point and a half or two points on the starboard bow; that shortly thereafter the schooner's red light shut in and the steamer's helm was at once put to starboard to pass the schooner starboard to starboard, and then the schooner ported her helm and changed her course to cross the steamer's bows and ran into the steamer, whose engines were not stopped till after the collision. It appeared in the evidence that there were two other schooners, the Maggie and Lucy and the Greene, which were running into Hampton Roads ahead of the Crockett, all three running on about the same line for the Thimble light, and that the steamer passed them on her port side. The Greene was about a quarter of a mile ahead of the Crockett.

W. W. Goodrich, for libellants.
Owen & Gray, for claimants.

BENEDICT, District Judge. I have examined the evidence in these cases in the light of the arguments presented by the respective advocates, and am satisfied that the collision in question arose from an attempt on the part of the steamship to pass between the schooner Crockett and the schooner Greene, thus crossing the bows of the Crockett, when she should have gone under her stern. As the schooners were sailing, it was not safe to attempt to pass between the schooners, nor was there any reason for making the attempt.

It may be that the attempt arose simply from an error in judgment on the part of those navigating the steamship, although my mind inclines strongly to the belief that it arose from the fact that the attention of those on the steamship was devoted to the two schooners ahead of the Crockett, and that the last vessel was not seen till the steamer was just upon her. The positive evidence of those on the steamship may perhaps be explained by their supposing that there were but two instead of three schooners following each other. However this may be, the liability of the steamship is the same whether her course arose from error of judgment or the failure to see that the Crockett was following behind the Greene.

Let decrees be entered in favor of the libellants, with an order of reference to ascertain the amount of the loss.